FRED W. JONES, Jr., Judge.
Vickie Kriger sued her husband, Charles Kriger, for a legal separation on the ground of abandonment. The defendant husband answered and reconvened for a legal separation based upon constructive abandonment. Following a hearing Mrs. Kriger was awarded alimony pendente lite in the sum of $1600 per month. Subsequently, after a trial on the merits, the trial judge concluded that the parties had impliedly agreed to separate and dismissed both demands for a legal separation. Both parties appealed this judgment. Kriger also appealed the judgment awarding his wife alimony pendente lite.
We affirm.
The Krigers, who were married in 1978, resided in Shreveport where Kriger operated a battery recycling company. He was also a partner in a small Texas firm with offices in Houston, which Kriger frequently visited on business trips. He made one of those trips on Wednesday, April 30,1980, to interview job applicants. Kriger expected his wife to join him the following day. Instead, Mrs. Kriger decided to visit her parents in Dallas. However, before leaving home she penned a twelve page letter to her husband detailing her perception of their marital difficulties, complaining primarily that Kriger was devoting an inordinate amount of time to his business endeavors to the neglect of his home life.[1] The letter was left at the matrimonial domicile for Kriger’s perusal upon his return. In order that Kriger might have time alone to ponder the contents of the letter, Mrs. Kri-ger explained in the epistle that she would be staying at the home of a Shreveport friend, Mrs. Patty Shields, after her brief visit to Dallas.
Both Krigers returned to Shreveport on Sunday, May 4 — Kriger to the family residence and Mrs. Kriger to her friend’s home. After a telephone conversation, Mrs. Kriger went back home on Tuesday, May 6 to discuss with her husband their marital problems. Their testimony concerning the substance of that conversation is contradictory. Mrs. Kriger testified that Kriger simply acknowledged that he was not “marriage material”, did not desire to remain married to her, and planned to vacate the family home. Kriger denied making these statements.
Be that as it may, the following day Mrs. Kriger assisted her husband in locating a *23 suitable apartment and in furnishing his new abode. She made the initial rent payment out of a joint bank account. Kriger moved into the apartment on Thursday, May 8. Mrs. Kriger filed her suit for a legal separation on May 13, 1980. At the time of the trial on the merits, August 19, 1980, the parties had not resumed living together.
Kriger returned to the family residence on Saturday, May 10, to pick up some business papers. Mrs. Kriger, who was bathing in preparation for attendance at a birthday party for Kriger’s small son by a prior marriage, had locked the doors of her home and left Kriger’s papers outside on the patio for his convenience. Both attended the birthday party. After this they lunched together on two separate occasions.
As a general rule, before a separation may be granted based upon abandonment it must be proven that one of the parties withdrew from the marital domicile without lawful cause and that the withdrawing party has consistently refused to return. La.C.C. Art. 143; Von Bechman v. Von Bechman, 386 So.2d 910 (La.1980); Clary v. Clary, 341 So.2d 628 (La.App. 4th Cir. 1977); Chamblee v. Chamblee, 340 So.2d 378 (La.App. 4th Cir. 1976).
In addition to the codal definition of abandonment, our jurisprudence has held that a “constructive” abandonment occurs when one spouse without just cause prevents the other from residing at the matrimonial domicile. Burnett v. Burnett, 349 So.2d 488 (La.App. 3rd Cir. 1977); Gilberti v. Gilberti, 338 So.2d 971 (La.App. 4th Cir. 1976); Robertson v. Robertson, 332 So.2d 896 (La.App. 2d Cir. 1976). As pointed out in Robertson, to establish constructive abandonment the crucial factor is the rejected party’s “bona fide attempt to return and live with defendant, which was refused.”
Of course, living apart by mutual agreement does not constitute abandonment. As pointed out in Palama v. Palama, 277 So.2d 468 (La.App. 4th Cir. 1973), proof of abandonment requires that there be “a voluntary and unjustified separation by one spouse without the voluntary agreement of the other and with the intent of terminating the marital relationship.”
The court in Bergeron v. Bergeron, 372 So.2d 731 (La.App. 4th Cir. 1979) observed that “all of the essential elements of abandonment must be shown to be involuntary on the part of the spouse bringing the action.” In that case the plaintiff was denied a legal separation for. abandonment because the “import of her testimony was that their remaining apart was by mutual agreement based on their recognition and acceptance of substantial and irreconcilable differences.”
In this case the trial judge concluded that the parties impliedly agreed to separate when Kriger moved into an apartment on May 8, and that there was no attempt at a reconciliation prior to trial on the merits. He doubtless considered as significant circumstantial evidence the fact that the Kri-gers continued living together for a couple of days following the discussion of their marital problems on May 6, indicating an absence of acrimony in this dialogue, and the fact that Mrs. Kriger assisted her husband in locating and furnishing an apartment.
In reviewing the trial judge’s finding in connection with this appeal, we are guided by the following statement found in Pearce v. Pearce, 348 So.2d 75 (La.1977):
“In the area of domestic relations, much discretion must be vested in the trial judge and particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of the credibility of witnesses. The trial judge having observed the demeanor of the witnesses is in the better position to rule on their credibility (citation omitted). The factual findings of the trial court are therefore to be accorded very substantial weight on review.”
In this case, after examining the record, we cannot say the trial judge was clearly wrong in his construction of the conduct of the parties as amounting to an implied agreement to separate. Conse *24 quently, he acted properly in dismissing Mrs. Kriger’s suit for a legal separation for abandonment since Kriger’s departure from and remaining away from the family home was not without his wife’s consent. The trial judge also properly dismissed Kriger’s reconventional demand for a separation for constructive abandonment because he did not make a “bona fide attempt to return and live” with his wife.
Having reached this conclusion, we find that the question raised by Kriger concerning the excessiveness of the alimony pen-dente lite award becomes academic. As this court noted in Bruner v. Bruner, 373 So.2d 971 (La.App.2d Cir. 1979):
“... once the alimony is established in a judgment, it is owed until the judgment reversing or modifying it becomes final. This is true even though the judgment of the appellate court unequivocally announces that alimony is not owed at the outset.”
Also see Frederic v. Frederic, 302 So.2d 903 (La.1974).
If we ordered a reduction in the alimony pendente lite award that change would not go into effect until our judgment became final. Since our judgment affirms the trial judge’s dismissal of the actions for legal separation, no alimony pendente lite would be due after this judgment becomes final. Therefore, at that time the question of alimony pendente lite would become moot and our action in ordering a reduction would have been a useless act — in which we now refrain from engaging.
For these reasons the judgment of the trial court is affirmed, with the costs of appeal to be paid out of community funds.
MARVIN, J., concurs.

. This letter was not introduced into evidence at the trial on the merits because it had apparently been disposed of by one of the parties. However, there appeared to be no dispute as to its substance.