419 So.2d 517 (1982)
Jeannine Elizabeth Tobin HAMITER, Plaintiff-Appellee,
v.
James Jewell HAMITER, Defendant-Appellant.
James L. HAMITER, Plaintiff-Appellant,
v.
Jeannine T. HAMITER, Defendant-Appellee.
Nos. 14938, 14939.
Court of Appeal of Louisiana, Second Circuit.
August 17, 1982.
Rehearing Denied September 24, 1982.[*]
*518 James E. Franklin, Jr., Shreveport, for plaintiff-appellee.
Hargrove, Guyton, Ramey & Barlow by Billy R. Pesnell & Joseph L. Shea, Shreveport, for defendant-appellant.
Before HALL, JASPER E. JONES and NORRIS, JJ.
JASPER E. JONES, Judge.
The litigants in these consolidated separation and divorce actions are James J. Hamiter and Jeannine T. Hamiter. Mr. Hamiter appeals a judgment awarding Mrs. Hamiter alimony pendente lite of $2,200 per month[1] and permanent alimony of $1,700 per month, and enjoining him from alienating, encumbering or disposing of any assets belonging to the community formerly existing between the parties.
Appellant makes three assignments of error. He contends the trial judge erred in (1) making an excessive award of alimony pendente lite and making the award retroactive, (2) awarding excessive permanent alimony, and (3) making an alimony award so large that it cannot be satisfied from income and enjoining the use of his assets to obtain funds to satisfy the award.
Mr. Hamiter does not appeal the judgment insofar as it decrees the divorce.
ASSIGNMENT # 1
Through this assignment appellant attacks both the amount and retroactivity of the award of alimony pendente lite.
As the award of alimony pendente lite was made in the judgment which granted the divorce it has no prospective effect[2] *519 and is not subject to review. There being no suspensive appeal of an alimony judgment,[3] it has been held that even if it is amended on appeal the judgment continues in its original amount until the appellate judgment becomes final. Langham v. Langham, 381 So.2d 1284 (La.App. 2d Cir. 1980); Frederic v. Frederic, 302 So.2d 903 (La.1974); Bruner v. Bruner, 373 So.2d 971 (La.App. 2d Cir. 1979). Kriger v. Kriger, 397 So.2d 21 (La.App. 2d Cir. 1981). Thus, this court has concluded that the correctness of an award of alimony pendente lite is moot when the divorce judgment, which terminates alimony pendente lite, is signed before the appellate judgment would become final. Tisby v. Tisby, 382 So.2d 1053 (La.App. 2d Cir. 1980).
Here the divorce was granted contemporaneously with the retroactive award of alimony pendente lite and this assignment, under the rationale of Tisby, is moot. It is appellant's position, however, that the application of Tisby, and through it Bruner, Frederic, Langham and Kriger, supra, would be constitutionally infirm as a denial of his right to judicial review under LSA-Const. Art. 1 § 19.[4]
The right of judicial review is subject to reasonable legislative restriction. Something Irish Co. v. Rack, 333 So.2d 773 (La.App. 1st Cir. 1976); Harris v. Dupree, 322 So.2d 380 (La.App. 2d Cir. 1975), writ refused 325 So.2d 612 (La.1976).
LSA-C.C.P. art. 3943 provides:
"An appeal from a judgment awarding custody of a person or alimony can be taken only within the delay provided by Article 3942. Such an appeal shall not suspend the execution of the judgment insofar as the judgment relates to custody or alimony."
The official comments under this Article state:
"It overturns a line of cases holding that a suspensive appeal may be taken from an alimony judgment .... Thus the wife will no longer be deprived of necessary support pending appeal."
The purpose of the provisions of LSA-C. C.P. art. 3943 denying a suspensive appeal from an alimony judgment is to prevent the denial of necessary support to a spouse pending appeal. That purpose demands the rule of Frederic, Bruner, Langham, and Kriger, supra. Without that rule the spouse receiving alimony would be put in an uncertain and precarious position only slightly better than he would occupy with no alimony award at all. Article 3943 as interpreted by Frederic, Bruner, Langham and Kriger, supra, is a reasonable and valid restriction on the right of judicial review.
Though we conclude that the propriety of the award of alimony pendente lite is moot, we also note that the record justifies the award.
Appellant complains that the retroactive award of alimony pendente lite is unfair and inequitable. These complaints are spurred by the fact that the retroactive award is for eighteen months and consequently represents a considerable sum.
We observe that the delay in the trial of this matter was not occasioned by sloth on the part of appellee or her various counsel.[5] Some of the delay can be attributed to the time necessary for each of appellee's new counsel to prepare to represent her in this complex litigation.[6] Delay has also been occasioned by several writ applications by appellant.
*520 While this court has recognized that in the face of compelling reasons the trial judge may elect not to commence alimony pendente lite from the date of judicial demand, Cumpton v. Cumpton, 283 So.2d 846 (La.App. 2d Cir. 1973), it is apparent from the district judge's action that he found no compelling reason here. We discern no error in that finding.
Though the judgment makes the award of alimony pendente lite retroactive, it also gives appellant credit for amounts previously paid under an agreement between the parties. This negated any unfairness which might have come from the retroactive award. Whitmeyer v. Whitmeyer, 326 So.2d 884 (La.App. 2d Cir. 1976).
Appellant also contends the district judge unconstitutionally applied LSA-C.C. art. 148.[7] The substance of this argument is that by awarding the appellee-wife alimony pendente lite at a level sufficient to allow her to live as she had during the marriage, the court reduced appellant's living standard to a level greatly below the one enjoyed by him before the separation and that this results in an unconstitutional gender discrimination in favor of appellee.
Generally, a litigant must plead the unconstitutionality of a statute in the trial court in order to raise the issue on appeal. Johnson v. Welsh, 334 So.2d 395 (La.1976); Nelson v. Nelson, 377 So.2d 882 (La.App. 4th Cir. 1979). Assuming arguendo that appellant is entitled to raise the issue of the possible unconstitutionality of Article 148 as it was not plead in the trial court, we observe that the primary problem with this argument is that it is not based on the facts of this case.
The record shows that the Hamiters enjoyed a high standard of living during their marriage and appellant has continued in that lifestyle during the pendency of these proceedings.[8] Appellant's latest financial statement in the record places his net worth at $440,000. That figure appears to be somewhat low due to substantial underevaluation of his wholly owned corporation and real estate holdings.
The award of alimony pendente lite seems appropriate to allow the parties to live at the same level though that may be somewhat below the level they previously enjoyed. The award is for an amount such that, had appellant been paying it previously, both parties would have borne, approximately equally, the hardships occasioned by the situation and such an award is appropriate. Arrendell v. Arrendell, 390 So.2d 927 (La.App. 2d Cir. 1980); Frederick v. Frederick, 379 So.2d 808 (La.App. 4th Cir. 1980). The record does not support appellant's assertion that the award of alimony pendente lite was for an amount which would have allowed appellee to enjoy a much higher standard of living than his.
This assignment of error is without merit.
ASSIGNMENT # 2
Through this assignment of error appellant attacks the award of $1,700 per month in permanent alimony. The judgment makes this award subject to a credit of $650 per month as long as appellee continues to reside in the family home and appellant pays the house note, $99 per month, taxes (amortized at $24 per month) and insurance (about $55 per month).
Appellant contends that the award of permanent alimony was based on inflated and exaggerated claims of expenses by appellee.
The award of permanent alimony under LSA-C.C. art. 160[9] should provide *521 for the basic necessities of food, shelter and clothing and reasonable expenses for transportation, medical care and drugs, utilities, household items and taxes. Bernhardt v. Bernhardt, 283 So.2d 226 (La.1973); Perry v. Perry, 319 So.2d 479 (La.App. 2d Cir. 1975), writ refused 322 So.2d 775 (La.1975).
We agree with the observation of Judge, now Justice, Lemmon that
"... a wife of 26 years should not be impoverished because her marriage to a spouse with substantial income has ended through no fault of her own..." (357 So.2d 90, at p. 93),
though she should not be maintained in the style of living she enjoyed during the marriage. Boisfontaine v. Boisfontaine, 357 So.2d 90 (La.App. 4th Cir. 1978), writs refused 358 So.2d 644 (La.1978).
The trial judge is vested with much discretion in setting the amount of alimony and his award will be disturbed only when that discretion is abused. Lormand v. Mouton, 337 So.2d 920 (La.App. 3d Cir. 1976); Liles v. Liles, 369 So.2d 479 (La.App. 4th Cir. 1979); Super v. Super, 397 So.2d 1084 (La.App. 4th Cir. 1981), writ denied 399 So.2d 583 (La.1981); Tracy v. Tracy, 388 So.2d 66 (La.App. 1st Cir. 1980).
Appellant attacks the amount and propriety of virtually every expense claimed by appellee. As to some of these items, appellant's contentions are inconsistent with his own claims.[10] After a review of the evidence we conclude that the following items and cost to provide them are adequately established by the totality of the evidence:

Utilities $ 170.87
Telephone 18.75
Dentist 50.00
Auto Payments 250.00
Auto Expense (oil, gas) 125.00
Auto Insurance 57.08
Hospitalization and Medical Insurance 100.00
Drugs 10.30
Medical Care 120.00
Food 260.00
Clothing 100.00
Housing 350.00
Household Supplies 45.00
Replacement cost of Washing Machine 45.00
 _________
TOTAL: $1,702.00

Appellee is also entitled to an amount to compensate for taxes which will vary depending on the amount of alimony received. The proven expenses fully support the amount of the award of permanent alimony.
Appellant contends that the trial judge erred in concluding appellee has no earning capacity and that the award of permanent alimony should be reduced to take into account appellee's earning capacity.
Whether or not appellee has any earning capacity is a question of fact on *522 which we may not disturb the trial judge's finding absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The evidence shows that appellee has not been employed in over twenty years, that she has a back infirmity for which she had an operation, and that she regularly undergoes physical therapy for her back ailment. This evidence amply supports the conclusion by the district judge that appellee has no earning capacity.
Appellant contends that the award of permanent alimony is excessive in that it exceeds one-third of his income in violation of LSA-C.C. art. 160.
The one-third rule of Article 160 applies to gross income. Shelton v. Shelton, 395 So.2d 899 (La.App. 2d Cir. 1981); cf. Lormand v. Moutan, supra. One cannot hide behind a corporate entity to avoid paying alimony and corporate benefits may be included in gross income. Ballard v. Ballard, 367 So.2d 1220 (La.App. 2d Cir. 1979); Gutierrez v. Gutierrez, 172 So.2d 753 (La.App. 4th Cir. 1965).
Appellant is the owner and president of Ideal Builder's Hardware, Inc. In his capacity as president he receives a salary and numerous fringe benefits. Included among those is a car and gasoline for business and personal use.[11] Appellant contends this benefit is worth only $102.04. That estimate is unrealistic. We find the value of the car and gas to appellant to be at least $250.00.
We find appellant's gross monthly income to be as follows:

Salary $1,800.00
Car Expense Free (Provided by
 corporation) 250.00
Life Insurance (monthly premium pd.
 by corp.) 305.64
Oil and Gas Income 51.52
Receives monthly from Credit Sale of
House and Lot 75.00
Rental Income 1,470.57
 _________
TOTAL: $3,952.73

One-third of appellant's income is $1,317.58 and Article 160 requires that the award of permanent alimony be reduced to that amount. The credit allowed appellant for appellee's use of the family home must also be reduced to $425.00.
We conclude that the amount of credit allowed appellant by the trial judge on the permanent alimony of $650 per month for the use of the community home by the appellee was related to the amount of the monthly permanent alimony award, and for that reason since we were required to reduce the monthly alimony award we also find it only fair to reduce the amount of credit to which appellant will receive for appellee's use of the family home to $425.
The appellant owes a total of approximately $70,000,[12] the liquidation of which he contends creates monthly fixed obligations totaling approximately $1600, which he must pay from his $3100 after tax net cash flow income, which leaves only $1500 to meet his own monthly living expenses which total approximately $1400. He therefore argues he has very little monthly income available to contribute toward the living expenses of his former wife.
The duty to pay alimony creates a very high priority obligation. One who owes alimony is required, if necessary, to reduce his expenses and make adjustments with his creditors in order to meet his alimony obligation. Kellogg v. Kellogg, 375 So.2d 200 (La.App. 2d Cir. 1979); Shelton v. Shelton, supra. The appellant has a net worth reflected on what we construe from the evidence to be an extremely conservative financial statement, of $440,000. He should easily be able to make the necessary adjustments to liquidate the necessary amount of his assets to secure the funds to pay enough of his debts that he can pay the remainder monthly and still meet his alimony obligation and pay his own living expenses.
Appellant's final contention with respect to this assignment is that the modification *523 is constitutionally required to be made retroactive to the first payment. For the reasons expressed with respect to the first assignment, we conclude that our judgment reducing the permanent alimony and adjusting the use of the family home credit, should have only prospective effect. Frederic; Bruner; Langham, and Kriger, supra.
ASSIGNMENT # 3
Through this assignment appellant attacks the post divorce injunction against his alienation, encumberance or disposal of the assets of the former community.
A party is not entitled to an injunction in a divorce judgment prohibiting the other from alienating or encumbering assets of the former community without a showing of irreparable injury. LeBlanc v. Lyons, 401 So.2d 626 (La.App. 3d Cir. 1981).
Here appellee has made no showing of irreparable injury and the trial judge was in error in maintaining the injunction after the divorce.
For the reasons set forth the judgment is amended to delete the fifth paragraph which provided for the injunction and to amend the fourth paragraph to reduce the monthly alimony to $1,317.58 and the credit which appellant shall receive on the alimony for appellee's use of the family home to the sum of $425.00. The reduction in alimony and family home credit to be effective only prospectively from the date of the finality of this decision.
As AMENDED the judgment is AFFIRMED. Costs on appeal are taxed equally against both parties.
NOTES
[*] F. Jones, J., dissents from refusal to grant a rehearing.
[1] The award of alimony pendente lite was made retroactive to the date of judicial demand, April 2, 1980.
[2] LSA-C.C. art. 148; Ward v. Ward, 339 So.2d 839 (La.1976).
[3] LSA-C.C.P. art. 3943.
[4] LSA-Const.Art. 1 § 19No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based. This right may be intelligently waived. The cost of transcribing the record shall be paid as provided by law.
[5] Appellee lost her original counsel because of her inability to pay for her attorney's fees as they accrued. The second change of counsel was necessitated when appellant had appellee's second counsel disqualified because of a potential conflict.
[6] The complexity of this matter is illustrated by the fact that the consolidated record contains seven volumes.
[7] Art. 148If the spouse has not a sufficient income for maintenance pending suit for separation from bed and board or for divorce, the judge may allow the claimant spouse, whether plaintiff or defendant, a sum for that spouse's support, proportioned to the needs of the claimant spouse and the means of the other spouse.
[8] Since departing the matrimonial domicile, appellant has taken for recreation two trips to Snow Mass, Colorado, one to Miami, Florida, and shorter trips to New Orleans and Hot Springs.
[9] C.C. art. 160When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, alimony which shall not exceed one-third of his or her income. Alimony shall not be denied on the ground that one spouse obtained a valid divorce from the other spouse in a court of another state or country which had no jurisdiction over the person of the claimant spouse. In determining the entitlement and amount of alimony after divorce, the court shall consider the income, means, and assets of the spouses; the liquidity of such assets; the financial obligations of the spouses, including their earning capacity; the effect of custody of children of the marriage upon the spouse's earning capacity; the time necessary for the recipient to acquire appropriate education, training, or employment; the health and age of the parties and their obligations to support or care for dependent children; any other circumstances that the court deems relevant.

In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capacity, in light of all other circumstances.
This alimony shall be revoked if it becomes unnecessary and terminates if the spouse to whom it has been awarded remarries.
[10] Appellant contends that appellee's claim of $260 per month for food is excessive and that $200 per month is sufficient for appellee's food and household supplies while he claims a monthly expense of $450 for food alone.

Appellant also contends that appellee is not entitled to any amount for the purchase of a car because she has an operating vehicle. The vehicle which forms the basis of this contention is a 1976 Oldsmobile. The record shows that the Oldsmobile is unreliable and in a deteriorating state. This auto is not the type of transportation to which appellee is entitled under Bernhardt. That appellee has ceded the use of the Oldsmobile to her daughter is of no moment and unsurprising in light of its condition.
Further discussion of appellant's contentions on an item by item basis would add nothing to this opinion.
[11] The corporation also insured the vehicle.
[12] This does not include approximately $30,000 which he contends he owes his attorneys for their services in this domestic litigation.