506 So.2d 609 (1987)
Lynn Almloff LINDNER
v.
Dennis Ray LINDNER.
No. CA6499.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 1987.
Writ Granted June 12, 1987.
*610 Philip R. Riegel, Jr., Bennett Wolff, New Orleans, for appellant.
Edward T. Diaz, A Professional Law Corp., Golden Meadow, for appellee.
Before GARRISON, BARRY and CIACCIO, JJ.
CIACCIO, Judge.
Plaintiff, Lynn Lindner appeals from a judgment of the trial court which awarded her alimony pendente lite in the amount of $2,231.00 per month commencing July 1, 1986 until October 1, 1986 and the sum of $750.00 per month thereafter until changed by the Court. Plaintiff seeks an increase and extension in the duration of the award. We affirm.
Plaintiff and defendant were married May 7,1981 in Orleans Parish. They thereafter moved to Lafourche Parish which remained as their matrimonial domicile until their physical separation in April, 1986. No children were born of the marriage.
During the existence of the marriage the defendant was self employed in the private practice of dentistry. In 1985, Dr. Lindner earned a net income of $119,320.00. He had gross receipts of $78,619.77 for the first four months of 1986.
Mrs. Lindner was a degreed dental hygenist. For several years following her marriage, she worked earning approximately $25,000 per year. During her last period of work, Mrs. Lindner was employed, part time, in 1985, for a period of eight months, earning $7,073.00.
Mrs. Lindner and her husband also owned a travel agency, known as "Bayou Travel", which was incorporated on July 5, 1984 and continued in existence until July 3, 1986. The business lost considerable amounts of money during its existence. Mrs. Lindner worked full time at the travel agency until the latter part of 1985. She did not receive a salary from this employment. During its existence, the business lost in excess of $66,436.00. Dr. Lindner had invested $49,748.00, during the operative years of the business.
In August 1985, Mrs. Lindner was accepted into Loyola Law School. She expressed her reason for entering law school as being a desire to pursue a more challenging career. With the moral and financial support of her husband, Mrs. Lindner established a residence in New Orleans. She would often travel to Lafourche Parish on the weekends. Mrs. Lindner completed a semester at the law school. She withdrew from the school in February, 1986 citing business and marital difficulties as her reasons. She was given permission from the school to return in the fall of 1986 without advanced standing and on academic probation.
*611 On April 25, 1986 Mrs. Lindner filed suit for separation and she sought alimony pendente lite for her support.
The rule for support was heard on July 17, 1986. In rendering its judgment, the trial judge gave the following reasons:
Either party shall have the right to ask for a change of this Judgment within ninety days, based on a change in circumstances, and thereafter, without a change in circumstances.
This Court follows the reasoning in the case of Whipple vs Whipple, 424 So.2d 263, which permits a court to consider the earning capacity of both parties in determining alimony pendente lite.
The Court finds that the husband has no obligation to support his estranged wife while she seeks a second career over an extended period of time.
The setting of alimony for the period until Oct. 1, 1986 is to provide an opportunity for the plaintiff to obtain employment within her field.
If she desires to seek a second career, she can do this on a part time basis.
Plaintiff appeals from the judgment alleging three assignments of error: (1) The trial court erred in awarding the wife alimony pendente lite of only $2,231.00 per month; (2) The trial court erred in reducing the award, after 90 days, to $750.00 per month because of the wife's earning capacity; and (3) The trial court erred in commencing the award from July 1, 1986.

Amount of The Award
The plaintiff contends that the award of $2,231.00 is insufficient in light of her needs and her husband's means.
Alimony pendente lite is governed by Louisiana Civil Code Article 148, which provides:
If the spouse has not a sufficient income for maintenance pending suit for separation from bed and board or for divorce, the judge may allow the claimant spouse, whether plaintiff or defendant, a sum for that spouse's support, proportioned to the needs of the claimant spouse and the means of the other spouse.
The amount of alimony pendente lite is based upon the standard of support which existed during the marriage. Gravois v. Gravois, 495 So.2d 315 (La.App., 4th Cir., 1986). The trial judge has much discretion in fixing the alimony award. Hegre v. Hegre, 483 So.2d 920 (La., 1986).
In resolving the issue of support, the factual findings of the trial court are accorded substantial weight and will not be disturbed on review unless clearly wrong. Teasdel v. Teasdel, 454 So.2d 886 (La.App. 4th Cir., 1984). Writ den. 458 So.2d 925 (La.1984).
In this case, Mrs. Lindner presented an expense list with expenses of $3,464.00 per month. In addition to the routine living expenses, Mrs. Lindner included her law school tuition of $583.00 per month, book expense of $50.00 per month and transportation of $704.00 per month. These items were presented with the anticipation that Mrs. Lindner would be returning to full time law school studies.
Dr. Lindner testified that his net earnings for 1985 were $119,320.00 from his practice of dentistry. He also testified that for the first four months of 1986 he had gross income of $78,619.97. He listed total business expenses of $13,689.47 per month and total monthly personal expenses of $896.90.
It is apparent that the trial court, in awarding Mrs. Lindner the sum of $2,231.00 per month compensated her fully for all her monthly expenses except those attendant to her return to law school as a full time student.
The record reflects that Mrs. Lindner is a qualified, degreed dental hygenist. She is capable of earning in the neighborhood of $25,000 per year with her professional training. She testified that no physical or other impediment existed which would have prevented her from returning to her established career. She had been employed within this field in the very recent past. At the time of this hearing, Mrs. Lindner was not in law school, having withdrawn therefrom in February, 1986.
*612 The trial judge in awarding $2,231.00 per month for a period of 90 days gave as his reason that "the husband has no obligation to support his estranged wife while she seeks a second career over an extended period." We, likewise, know of no authority by which the husband can be compelled to bear the expenses of educational training for his wife's second career. This is especially true where the wife has a viable profession and has no impediments to the exercise of her profession. Under these circumstances we find that the trial judge did not abuse his discretion in awarding the plaintiff alimony pendente lite of $2,231.00 per month for the first 90 days of the award. Accordingly this assignment of error lacks merit.

Reduction of the Award
The plaintiff next argues that the trial court erred in reducing her award to $750.00 per month after 90 days.
In his reasons for judgment the trial judge stated that he was considering "the earning capacity of both parties" as dictated by Whipple v. Whipple, 424 So.2d 263 (La.App., 1st Cir., 1982). He also stated that the enhanced award would cover a 90 day period so as "to provide an opportunity for the plaintiff to obtain employment within her field."
This Court, in Gravois v. Gravois, 495 So.2d 315 (La.App., 4th Cir., 1986), adopted the rationale expressed in Whipple, supra. In Gravois, supra at 316-317, this Court states:
After careful consideration, it is our opinion that the position taken by the First Circuit in Whipple, supra, provides the most practical and fair means of implementing both the letter and the spirit of C.C. Art. 148. Whipple, analyzed and resolved this question as follows:

Arrendell [v. Arrendell, 390 So.2d 927 (La.App. 2nd Cir.1980)] accepts the traditional view that alimony pendente lite is designed to preserve the status quo insofar as maintenance and support are concerned. The pendente lite period is seen as a time for rehabilitation and if "the spouses themselves have, during the marriage, assigned the role of wage earner to one and the role of homemaker to the other, fairness and practicality dictate that the wage earner spouse continue that role during the temporary period of litigation and adjustment." 390 So.2d at 930. Yet, even Arrendell admits the earning capacity of the claimant spouse should be considered if neither spouse is employed or if a claimant spouse has been regularly employed during the marriage but happens not to be employed at the very moment of trial of the alimony rule, and has the capability of securing employment immediately. 424 So.2d at 266.
The court went on to discuss its view of the law as follows:
Aside from the removal of the sex bias in old article 148, the 1979 amendment also changed the word "shall" to the word "may" in providing for an award of alimony pendente lite. Thus, as article 148 now stands, it is discretionary with the trial court to award alimony pendente lite if the petitioning spouse lacks sufficient income for his or/her support. We find the legislative purpose in making the change in wording from "shall" to "may" to have been to effect a substantive change so that the trial court is not always required to award alimony if other factors are present, such as the petitioning spouse's capacity for self support. If it is apparent a claimant has quit work or is only temporarily unemployed, the judge may exercise his discretion and refuse a pendente lite award or give a decreased amount.
In this case, the trial judge correctly considered the plaintiff's earning capacity. He also provided a 90 day period during which the plaintiff could attempt to secure a job commensurate with her skills and training. The judge further provided that either party could ask for a change in the award, in the event of a change of circumstances within the 90 day period (i.e., such as an inability to secure employment), and without a change in circumstances after the 90 day period. Under these circumstances we find no abuse of discretion in *613 the alimony award which considered the parties earning capacity, allowed a period of time for the wife to seek employment and reduced the award in anticipation of employment.
Plaintiff relies upon two Supreme Court cases in support of her position that the trial court erred in reducing the award after three months. Hegre v. Hegre, supra; Teasdel v. Teasdel, supra.
We, however, find Hegre, supra and Teasdel, supra distinguishable from this case. The Hegre and Teasdel cases, supra, involved permanent alimony under La. Civil Code Article 160 and the present case involves alimony pendente lite under La. Civil Code Article 148. Louisiana Civil Code Article 160 sets forth the factors to be considered in a permanent alimony award. It lists as factors for consideration "earning capacity" and "the time necessary for the recipient to acquire appropriate education, training or employment."
In the Hegre case supra, Mrs. Hegre was a forty-seven year old former wife of a physician who was engaged in the specialized private practice of medicine. Mrs. Hegre had received an RN certificate 23 years before the divorce. She never practiced full time nursing and had not been involved with direct patient care for 19 years before this action. Mrs. Hegre was not licensed in Louisiana and her last certificate for nursing had lapsed over 20 years before. Expert testimony was presented which evidenced Mrs. Hegre's employment opportunities as "limited" at best. Additionally she was found to be emotionally unable to practice her profession. Based upon these facts, the Court in Hegre, supra at 924 concluded:
There is no basis to support the arbitrary one year cut-off period for receipt of alimony adopted by the Court of Appeal. Nothing indicates that a one year period would allow Beverly Hegre to obtain "appropriate education, training or employment."
Likewise, in Teasdel, supra the Court concluded that Mrs. Teasdel was entitled to permanent alimony. Mrs. Teasdel was 54 years old at the time of the hearing. She had never been gainfully employed in her life and possessed no employment skills. She vigorously sought employment without success. Additionally, Mrs. Teasdel suffered from nerve damage in her face which caused her continual pain and partial paralysis. In arriving at its conclusion in Teasdel, 493 So.2d 1165, 1168 the Supreme Court reasoned as follows:
There is no question that permanent alimony is a pension which is designed to prevent a former spouse from becoming a public charge. Despite the testimony that she has some minimal earning capacity, her age, health, lack of job experience and training make it unlikely that Patricia Church would have a favored position in the job market. She had made a good faith effort to find employment, and it is obvious that she would not be existing on borrowed money and the charity of friends if she were in fact able to find a job.
The lower courts were manifestly erroneous in finding that Patricia Church has an "earning capability" or "earning capacity" which makes alimony for her unnecessary. Despite speculation about her employment potential, there is no evidence that any job is available in metropolitan New Orleans for Patricia Church. There is no proof that alimony for her is unnecessary. On the contrary, the evidence is that she has suffered privation for lack of support.
The instant case is factually distinguishable from Hegre, supra and Teasdel, supra. In this case the plaintiff is a young woman with no physical impediments. She has professional skills and training which have been utilized within the very recent past. Under these facts it was reasonable for the trial judge to conclude that Mrs. Lindner could become gainfully employed within 90 days, thus reducing her need for payments from her husband after the 90 day period.

Duration of the Award
Finally, the plaintiff contends that the trial court erred in commencing the alimony award from July 1, 1986 rather than the date of demand.
*614 The trial judge has discretion in setting the effective date of an alimony award. Anderson v. Anderson, 441 So.2d 413 (La. App., 4th Cir., 1983).
In this case the petition was filed on April 25, 1986 and the alimony rule was originally set for May 19, 1986. Due to continuances by both parties, the rule came to be heard on July 17, 1986 and judgment was rendered July 18, 1986. The judge has wide discretion in setting the effective date of alimony awards and in this case there has been no showing that he abused his discretion by commencing the alimony award on July 1, 1986.
For the reasons assigned, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.